FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2012 NOV -5 AM 11: 39

_R au_
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

CHRISTOPHER B. WARREN,

   Plaintiff,

v.               CIVIL ACTION NO.: CV512-001

BARRY GOODRICH; PEGGY
ANN COOPER; ERNEST ACREE;
and MICHAEL JOINER,

   Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Coffee Correctional Facility in Nicholls, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983. Defendants filed a Motion for Summary Judgment, to which Plaintiff failed to respond.[1] Based on the following, Defendants' Unopposed Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff contends that Defendant Goodrich ordered Defendants Acree and Joiner to place Plaintiff in involuntary segregation without being advised of the charges against him and that he remained in involuntary segregation for over three (3) months. Plaintiff asserts that Defendant Cooper failed to provide him with proper notice of the charges

---

[1] Plaintiff was allowed until October 19, 2012, to file any desired response to Defendants' Motion. (Doc. No. 42). In fact, Plaintiff was allowed another extension to respond. (Doc. No. 37). Plaintiff was also granted leave to file an amended complaint, (Doc. No. 28), but Plaintiff never filed an Amended Complaint.

AO 72A
(Rev. 8/82)

against him. Plaintiff also asserts that he was denied his right to exercise his religion and to receive meat-free meals based on his religious beliefs, presumably while he was housed in involuntary segregation. Plaintiff further asserts that he has high blood pressure or hypertension, bursitis, and tendonitis, and Defendants Cooper, Goodrich, Acree, and Joiner knew or should have known that he suffers from these conditions and was not receiving medication for these conditions before he was placed in involuntary segregation.

Defendants contend that Plaintiff's assertions against them fail as a matter of law and that they are entitled to judgment in their favor.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish

AO 72A
(Rev. 8/82)

that there are no "genuine dispute[s] as to any material fact and the movant[s are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION AND CITATION TO AUTHORITY

### I. Deliberate Indifference

Defendants allege that Plaintiff was placed in non-punitive administrative segregation, and, the next morning, medical staff assessed Plaintiff and determined nothing in Plaintiff's medical status precluded his placement in segregation. Defendants contend that the only conditions Plaintiff had were controlled hypertension and shoulder discomfort, for which he received self-administered medications. Defendants also contend that Plaintiff asserts that he did not have these medications when he first went into segregation but received them later. Defendants note that Plaintiff does not allege that he had any medical injury at all, only that he could have had one, which is insufficient to show Defendants were deliberately indifferent to a serious medical need.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to

3

guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Det. Center Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). For example, the Eleventh Circuit has determined "that a doctor's failure to administer stronger medication . . . pending the arrival of [an] ambulance . . . [was] a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983." Id. (citing Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir.1995)). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

Plaintiff stated during his deposition that he sued Defendants because they knew or should have known that he was taking medications and that he was not seen by medical staff before he was placed in segregation. (Doc. No. 34-1, pp. 4-8, 13-14). However, Plaintiff also stated that he voiced his medical need (i.e., to get more medication) to medical staff, and his medications were refilled. (Id. at p. 19). Defendants submitted a copy of Plaintiff's Pre-Segregation Health Evaluation form, which indicates that Plaintiff was medically cleared for segregation at 7:00am on December 9, 2010. (Doc. No. 34-1, p. 31).

There is nothing before the Court which creates a genuine dispute as to any fact material to Plaintiff's deliberate indifference claims. At best, the evidence shows that

5

Plaintiff was not medically cleared prior to his placement in segregation, but he was cleared early the next day. In addition, Plaintiff does not show that a delay in any treatment exacerbated his conditions. Nor does Plaintiff present evidence that, if policy had been violated because he was not cleared for segregation before his placement, said violation resulted in a constitutional violation. Moreover, Plaintiff fails to present any evidence which creates a genuine dispute as to any fact material to his claims that he had a serious medical need or needs and that Defendants were deliberately indifferent to those needs. In fact, Plaintiff essentially admits that he did not have a serious medical need, only that he "[c]ould have had[ ]" a serious medical need. (Doc. No. 34-1, p. 8). This portion of Defendants' Motion should be granted.

II.  Due Process Claims

   A.  Procedural Due Process[2]

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Co. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). Constitutionally adequate process requires compliance with the minimum due process protections accorded to an inmate in prison disciplinary proceedings: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly

---

[2] Plaintiff's Complaint was served based on his allegations of violations of both his procedural and substantive due process rights. Defendants did not address Plaintiff's procedural due process allegations separately. Nevertheless, the undersigned addresses this alleged violation separately from Plaintiff's substantive due process claim, as there is some evidence in the record to allow this undersigned to do so.

6

hazardous to institutional safety or correctional goals; and (3) the right to receive a written statement setting forth the disciplinary committee's findings of fact. Asad v. Crosby, 158 F. App'x 166, 173 (11th Cir. 2005) (citing Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974)).

There is nothing before the Court which indicates Defendants violated Plaintiff's procedural due process rights. Plaintiff testified during his deposition that he was never told why he was placed in segregation. (Doc. No. 34-1, p. 9). However, Plaintiff also testified that there is a difference between administrative and punitive segregation. (Id. at p. 10). Plaintiff also testified that he did not receive a disciplinary report prior to his placement in administrative segregation. (Id. at pp. 10-11). Defendants Acree, Joiner, and Goodrich state in their affidavits that Plaintiff was placed in non-punitive, or administrative, segregation. (Doc. No. 34-1, p. 34, ¶ 4; Doc. No. 34-1, p. 44, ¶ 3; Doc. No. 34-1, p. 46, ¶ 3). Because Plaintiff was not placed in punitive segregation and was not charged with any infraction, there was no attendant duty, under due process principles, to notify him of any charges or reasons for his placement in segregation. As a matter of law, Plaintiff's procedural due process claim should be dismissed.

B.  **Substantive Due Process**

Defendants aver that, at Coffee Correctional Facility, prisoners assigned to non-punitive segregation are treated similarly to prisoners assigned to the general population. Defendants contend that prisoners in non-punitive segregation: are allowed to take personal possessions with them, with some limitations; have cells which are equipped in a similar manner and are the same size as those in general population; are given the same personal hygiene opportunities, except that prisoners in administrative

7

segregation are permitted showers three (3) times a week and can shave only with clippers; are allowed visitation and correspondence privileges; get the same quantities of food as those inmates in general population; and are allowed five (5) hours a week of outside exercise. (Doc. No. 34, p. 15). Defendants assert that Plaintiff's substantive due process rights were not violated because the conditions of confinement in administrative segregation are substantially similar to those of other inmates.

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. AMEND. XIV). The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 1290-91 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485. The Court determined that the conditions

8

of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487.

According to Policy 10-100, inmates housed in administrative segregation are allowed to shower, at a minimum, three (3) times a week. These inmates are also given hair care, clothing, linens, and correspondence privileges in the same manner as inmates in general population. In addition, inmates in administrative segregation are allowed to have possession of many items, excluding boots, tennis shoes, dental floss, baby oil, tweezers, nail clippers, razors, fans, electrical adaptors, large radios, size D batteries, mirrors, and products deemed a security risk. (Doc. No. 34-1, pp. 32-33; Doc. No. 34-1, pp. 34-33, ¶ 4). Plaintiff stated during his deposition that he was allowed to take all of his property "except a list of items[ ]" he was not allowed to have. (Id. at p. 10).

The evidence before the Court reveals that Plaintiff makes no assertion that the conditions of his confinement in administrative segregation were substantially different from those conditions for inmates housed in the general population. In short, Plaintiff fails to create a genuine dispute that the conditions of administrative segregation imposed an "atypical, significant deprivation in which a State might conceivably create a

AO 72A
(Rev. 8/82)

liberty interest." Sandin, 515 U.S. at 486. Accordingly, this portion of Defendants' Motion should be granted.

### III. Failure to Exhaust Administrative Remedies

Defendants assert that, though Plaintiff did file grievances about his placement in administrative segregation, he did not file a grievance regarding his claim that he is entitled to a meat-free diet based on religious beliefs. .

#### A. Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

#### B. Applicable Law

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523.

The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1097 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376-77.

Within the Georgia Department of Corrections, the grievance procedure is a three-step process. Blackerby v. McNeil, No. CV307-071, 2008 WL 5209975, at *4 (S.D. Ga. Oct. 7, 2008). It commences with the filing of an informal grievance which

must be filed within ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance." Id. (Emphasis supplied). If an inmate is unsatisfied with the resolution of his informal grievance, a formal grievance form must be submitted within five business days. Id. (Emphases supplied). The Warden has thirty calendar days to respond to the formal grievance. Id. If the inmate is not satisfied with the Warden's response, he has five business days to file an appeal; then, the Office of the Commissioner has ninety calendar days to respond. Id.

Defendants submitted the affidavit of Alissa Trowell, who was the Grievance Coordinator at Coffee Correctional Facility.[3] According to Ms. Trowell, Plaintiff filed four (4) grievances regarding his confinement. However, Ms. Trowell declares, Plaintiff did not file a grievance complaining of being denied a religiously-based diet or even a meat-free diet generally. (Doc. No. 34-1, p. 40, ¶ 3). As Plaintiff makes no assertion—supported or unsupported—that he exhausted his administrative remedies regarding his claim that he was denied a meat-free diet, in violation of his religious beliefs, this portion of Defendants' Motion should be granted.

---

[3] The undersigned presumes that Coffee Correctional Facility has the same grievance procedures in place as facilities controlled by the Georgia Department of Corrections.

12

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Unopposed Motion for Summary Judgment be **GRANTED**. It is also my **RECOMMENDATION** that Plaintiff's deliberate indifference and due process claims be **DISMISSED**, with prejudice, and that Plaintiff's First Amendment claims be **DISMISSED**, without prejudice.

**SO REPORTED** and **RECOMMENDED**, this 5th day of November, 2012.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)